# RUBIN LLC
*Attorneys at Law*

11 Broadway, Suite 715
New York, New York 10004
www.rubinlawllc.com

PAUL A. RUBIN                                                                                   Telephone: 212.390.8054
prubin@rubinlawllc.com                                                                    Facsimile:  212.390.8064

January 22, 2024

<u>Via ECF</u>
Hon. Elizabeth S. Stong
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

> Re:    *In re 525 Park Williamsburg LLC*; Case No. 24-40228-ess

Dear Judge Stong:

This firm is counsel to 525 Park LLC ("<u>Seller</u>") in connection with the above-referenced chapter 11 case of 525 Park Williamsburg, LLC (the "<u>Debtor</u>").  We write to respectfully request that, until Seller has had an opportunity to be heard on the issue, the Court refrain from entering that portion of the Debtor's proposed *Order to Show Cause for (A) Enforcement of Stay Pending the Court's Determination of the Stay Violation and (B) Scheduling a Hearing to Enforce the Stay* (the "<u>Proposed OSC</u>") which requests injunctive relief enjoining Seller from (i) disbursing a down payment (the "<u>Deposit</u>") that the Debtor released to Seller in May 2022, and (ii) transferring the real property located at 525 Park Avenue, Brooklyn, New York (the "<u>Property</u>").

The Debtor was the contract vendee under a Purchase and Sale Agreement dated May 2022 (the "<u>PSA</u>") for the purchase of the Property.  Seller terminated the PSA by letter dated February 23, 2023 due to the Debtor's failure to close on the purchase of the Property on or before the time of the essence closing deadline.  A copy of the Notice of Default dated February 23, 2023 is annexed hereto as <u>Exhibit A</u>.  On July 25, 2023, the Debtor commenced an action against Seller in the New York Supreme Court, Kings County (the "<u>State Court</u>") seeking specific performance of the PSA and imposition of a constructive trust regarding the Deposit.  By Decision and Order dated December 7, 2023 (the "<u>December 7th Decision</u>"), the State Court granted Seller's motion to dismiss the Debtor's complaint and vacated a notice of pendency that the Debtor had filed against the Property.  A copy of the December 7th Decision is annexed hereto as <u>Exhibit B</u>.  The Debtor thereafter moved, by order to show cause to reargue the motion to dismiss.  On December 19, 2023, the State Court entered the order to show cause with a temporary restraining order (the "<u>TRO</u>") enjoining Seller from transferring the Property pending the hearing on the motion to reargue scheduled for January 18, 2024.  By Decision and Order dated January 18, 2024, the State Court denied the Debtor's motion to reargue the December 7th Decision and lifted the TRO.

January 22, 2024
Page 2

The Debtor does not have an interest in either the Deposit or the Property for which it would be entitled to injunctive relief.  By its own admission, the Debtor provided the Deposit to Seller under the Purchase and Sale Agreement dated May 2022 (the "<u>PSA</u>") between the parties, "*which was remitted directly to Seller for its own immediate use and not held in escrow.*"  Declaration of Miriam Kahan in support of the Proposed OSC (the "<u>Kahan Declaration</u>") [ECF No. 10] ¶ 6 (emphasis added); *see also* PSA § 2.1(a) ("Seller and Purchaser each agree that the Downpayment shall be immediately released to Seller.").  Furthermore, the State Court specifically found in its December 7th Decision that Seller "is entitled to retain the Deposit as plaintiff [the Debtor] failed to close pursuant to the PSA."  December 7th Decision p. 7.  Accordingly, as of the petition date, the Debtor had no legal or equitable interest in the Deposit.

In any event, even if the Debtor were able assert a legally-cognizable interest in the Deposit, the Debtor cannot demonstrate irreparable harm entitling it the injunctive relief that it seeks because "injuries fully remedied by monetary damages do not constitute irreparable harm."  *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (citing *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 24 (2d Cir. 1991)).

Nor has the Debtor demonstrated that it holds any interest in the Property.  The Debtor's sole connection to the Property was its now-extinguished rights as purchaser under the PSA.  The PSA was terminated by Seller in February 2023 due to the Debtor's failure to close on the purchase of the Property, time being of the essence.  *See* December 7th Decision p. 3-4; Seller's Notice of Default dated February 23, 2023.  The Debtor has not demonstrated any entitlement to the extraordinary remedy of injunctive relief when it has failed to demonstrate that it holds any interest in Seller's property that the Debtor seeks to restrain.

Finally, the balance of equities weighs heavily in Seller's favor, because it would be prejudiced if it were prevented from selling its property in which the Debtor owns no interest.  Moreover, the State Court ruled on the Debtor's motion to reargue after the Debtor's state court counsel advised that the State Court could rule on the motion withstanding the Debtor's bankruptcy filing, *based on the advice of bankruptcy counsel*.  *See* Transcript of January 18, 2024 Hearing on Motion to Reargue at pp. 8-9, a copy of which is annexed hereto as <u>Exhibit C</u>.  Indeed, the Debtor's motion to reargue did not involve any effort to assert any rights against the Debtor or property of the Debtor.  Therefore, the State Court did not violate the automatic stay by ruling on the Debtor's motion to reargue.

For the foregoing reasons, Seller respectfully requests an opportunity to be heard before the Court considers entry of any injunctive relief in the Proposed OSC.

Respectfully submitted,

RUBIN LLC

By:    */s/ Paul A. Rubin*
          Paul A. Rubin

**RUBIN LLC**

# EXHIBIT A
# (NOTICE OF DEFAULT)

FILED: KINGS COUNTY CLERK 08/21/2023 10:35 AM
NYSCEF DOC. NO. 18
INDEX NO. 521411/2023
RECEIVED NYSCEF: 08/21/2023

# LAW OFFICE OF ARIEL S. FARKAS, ESQ.
### ATTORNEY AT LAW

16 Waverly Avenue
2nd Floor
Brooklyn, New York 11205
(718) 243-0700 ext. 102.

February 23, 2023

**VIA EMAIL & FEDEX OVERNIGHT**
525 Park Williamsburg LLC
5308 13th Avenue, Suite 483
Brooklyn, NY 11219
chesedforall@gmail.com

Joseph Taub, Esq.
1701 Quentin Rd, Suite B7
Brooklyn, New York 11229
joetaub@gmail.com

## NOTICE OF DEFAULT

**Re:** **Purchase and Sale Agreement (the "PSA") dated May 27, 2022 between 525 Park LLC ("Seller") and 525 Park Williamsburg LLC ("Purchaser") for the premises known as 525 Park Avenue, Brooklyn, New York (the "Premises")**

Dear Mr. Taub:

This letter shall serve as notice to Purchaser that Purchaser is in default of the PSA having failed to appear at the closing on February 21, 2023 to close title to the purchase of the Premises.

Pursuant to the January 18, 2023 notice sent to Purchaser and Purchaser's attorney, a closing was set for Tuesday, February 21, 2023, TIME BEING OF THE ESSENCE, at the offices of Seller's attorney located at 16 Waverly Avenue, Brooklyn, New York.

Seller timely appeared as scheduled on Tuesday, February 21, 2023 and with the title company ready, willing, and able to close with the deed, closing documents, and all other necessary documents in recordable form required to be delivered by Seller pursuant to the PSA. Accordingly, Purchaser having failed to appear at the closing on February 21, 2023 to close title to purchase the Premises is deemed in default in its obligation under the PSA and Seller hereby terminates the PSA and will be retaining the Downpayment, and any interest thereon, as liquidated damages.

Nothing contained herein or otherwise shall modify or waive any of Seller's rights or remedies and Seller hereby expressly reserves all of its rights and remedies at law and equity.

Sincerely,

/s/ Ariel S. Farkas
*Attorney for Seller*

cc:  Eli Lefkowitz, Esq.
     1222 Avenue M, Suite 402
     Brooklyn, New York 11230
     Eli@MLwitz.com

# EXHIBIT B
# (DECEMBER 7TH DECISION)

At an IAS Term Commercial Part 12 of the Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at 360
Adams Street, Borough of Brooklyn, City and State
of New York on the 7th day of December 2023

PRESENT:
Honorable Reginald A. Boddie
Justice, Supreme Court
------------------------------------------------------------------X

525 PARK WILLIAMSBURG, LLC,

                              Plaintiff,                     Index No. 521411/2023

                 -against-                                  Cal. No. 2-3    MS 1-2

525 PARK LLC,                                               **Decision and Order**

                              Defendant.
------------------------------------------------------------------X
The following e-filed papers read herein:                  NYSCEF Doc Nos.
MS 1                                                        8-21; 28-30
MS 2                                                        34-40; 43

Upon the foregoing papers, defendant's motion (MS 1) to dismiss this action pursuant to
CPLR 3211(a)(1) and (a)(7) and for sanctions against plaintiff pursuant to NYCRR 130-1.1 and
CPLR 6514(c) and plaintiff's cross-motion (MS 2) to compel defendant to perform the relevant
purchase agreement and transfer the deed to the premises are decided as follows:

In or around the spring of 2022, the parties entered into a purchase and sale agreement
(hereinafter "PSA") by which plaintiff, as buyer, agreed to purchase defendant's property located
at 525 Park Avenue in Brooklyn, New York, for $11 million. Plaintiff provided a down payment
of $1 million to defendant ("Deposit"), which plaintiff agreed to immediately release to defendant
(see NYSCEF Doc No. 10, PSA, § 2.2(a)).

Section 3 of the PSA, titled "Closing" provides, in relevant part, that:

1

> "The closing of title to the Premises (the "Closing") shall take place
> at the offices of Seller's counsel ... on a date that is the later to occur
> of: (i) on or about sixty (60) days from the Agreement Date, and (ii)
> fifteen (15) days from the date Seller provides notice to Purchaser
> that the Premises is vacant, TIME BEING OF THE ESSENCE as to
> Purchaser's obligation to close hereunder on such date and at such
> time (the "Scheduled Closing Date")."

On December 1, 2022, after the property was purportedly vacant, defendant's counsel
provided plaintiff's transactional counsel, Joseph Taub ("Taub"), with a "time of the essence"
letter, scheduling a closing for December 16, 2022. On or around December 15, 2022, plaintiff's
counsel sent a letter to defendant's counsel rejecting the scheduled closing date "due to the fact
that Seller has not demonstrated its ability to close pursuant to and in accordance with the PSA
and to satisfy various conditions precedent to Purchaser's obligation to purchase the Premises"
(NYSCEF Doc. No. 12). Defendant claims, herein, that these assertions were false.

In any event, by letter dated January 18, 2023, a second "time of the essence" closing was
scheduled by defendant for February 21, 2023. Shia Meisels, representative for defendant,
appeared for the scheduled closing on February 21, 2023, together with defendant's counsel and
the title closer. Plaintiff did not appear for the closing. On or around February 23, 2023,
defendant's attorney provided Taub and plaintiff with a Letter of Default.

On July 25, 2023, plaintiff commenced this action seeking specific performance of the PSA
and imposition of a constructive trust with regards to the Deposit. Plaintiff alleges that defendant
promised to make a "genuine effort" to assist buyer to obtain financing, as indicated in the PSA,
but that defendant failed to do so. Of note, the relevant provision in the PSA provides:

> "Notwithstanding anything to the contrary contained herein, if
> Purchaser shall finance any portion of the Purchase Price, and if
> Purchaser's lender shall so require, the Closing shall commence, on
> or before 10:00 a.m. (and to fund prior to 4:00 p.m.) on or before the
> Scheduled Closing Date or Adjourned Closing Date, as finally
> determined, TIME BEING OF THE ESSENCE at the offices of
> Purchaser's lending institution or its counsel in New York City, or
> in Nassau or Westchester County. Nothing herein contained shall be

2

deemed to create a financing contingency or to condition Purchaser's obligations hereunder on Purchaser's ability to obtain financing.

Seller or CW Realty Group LLC ("CW") shall provide reasonable cooperation and assistance to Buyer in connection with the arrangement of buyer financing for this transaction provided that such requested cooperation and assistance does not unreasonably interfere with the ongoing business of such Seller. Purchaser's obligation to close the transaction hereunder on the Scheduled Closing Date shall not, in any way, be subject to or conditioned upon Seller or CW's arranging of buyer financing on behalf of Purchaser" (see NYSCEF Doc No. 10, PSA, § 3.4).

It is plaintiff's position that, because defendant failed to comply with the covenants and promises under the PSA, defendant could not set a time-of-the-essence closing. Plaintiff also alleges that defendant's principal, Cheskie Weisz, encouraged a relationship of trust and confidence with plaintiff's principal, Haim Kahan ("Kahan"), and promised that he could assist Kahan in obtaining real estate financing on favorable terms, and by doing so, manipulated Kahan into releasing the $1 million dollar contract deposit directly to him.

In moving to dismiss the complaint, defendant argues that plaintiff's action is without merit based on the PSA. Specifically, that plaintiff failed to perform under the PSA by failing to close on both scheduled closing dates despite being given the required 15-day notice of a time-of-the-essence closing and a second chance to close. Defendant points out that plaintiff essentially admits, in its complaint, that it was not ready and willing to close due to a lack of financing. Regarding plaintiff's allegation that defendant broke its promise to assist buyer with obtaining financing, defendant points out that plaintiff made no mention of its need for seller's cooperation to obtain financing in its initial letter rejecting the scheduling of the first time-of-the-essence closing and, as such, that this claim lacks any credibility. Moreover, defendant contends that plaintiff's allegation that seller failed to assist buyer obtain financing is a frivolous claim directly

3

refuted by the express language in the PSA, which states that seller is not responsible for arranging buyer financing on behalf of plaintiff.

Regarding plaintiff's second cause of action for a constructive trust, defendant contends that such claim must be dismissed as duplicative of its specific performance claim. Moreover, defendant submits that a party claiming entitlement to a constructive trust must establish a confidential or fiduciary relationship between the parties, and plaintiff's vague allegation of a mentor relationship between seller and purchaser is insufficient to claim the existence of a fiduciary relationship. Lastly, defendant argues that plaintiff's constructive trust claim fails as a matter of law because there can be no unjust enrichment where seller retained the Deposit pursuant to the terms of the PSA. In this regard, defendant references section 15.1 of the PSA which provides:

> "If Purchaser defaults in its obligation to close title to the purchase of the Premises, or if Purchaser defaults in any of its other obligations under this Agreement, Seller's sole remedy shall be to terminate this Agreement and to receive and retain the Downpayment, and any interest thereon, as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be difficult or impossible to ascertain, and that the Downpayment, and the interest thereon, constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty."

Based on plaintiff's purported failure to state a cause of action for specific performance or constructive trust, defendant requests the complaint be dismissed and the notice of pendency cancelled. Moreover, defendant argues that the court should award it sanctions due to plaintiff's commencement of this lawsuit, which, defendant alleges, was initiated solely to harass defendant and obtain leverage in holding up the sale of the Property in an effort to force a return of its Deposit. Defendant thus requests that the court award defendant, at the very least, its attorneys' fees for having to file this motion, which it contends that it is also entitled to under CPLR 6514(c) due to the filing and cancellation of a notice of pendency.

4

In opposition, plaintiff contends that the record in this matter reflects a total absence of effort by the seller to perform under its promise to make efforts to provide reasonable cooperation and assistance to the purchaser in connection with buyer's financing and that its time to close could not have been triggered until this covenant was complied with. It is plaintiff's position that the language which states that the seller does not guaranty financing does not magically obviate the seller's clearly stated obligations to take commercially reasonable and objectively verifiable steps to live up to its contractual promise to make bona fide efforts to do what it promised to do. Plaintiff points out that defendant fails to present any documentary evidence of compliance of its covenant.

In reply, defendant contends that the PSA refutes plaintiff's argument that "reasonable cooperation" was a condition precedent and that the PSA is clear that plaintiff was required to close regardless of defendant's alleged lack of assistance. Defendant contends that plaintiff fails to allege, in the complaint, how defendant refused to cooperate with plaintiff. Instead, that plaintiff's opposition relies on a misstated fact that defendant was obligated to take some affirmative action to comply with section 3.4.

By way of a belated cross-motion, plaintiff seeks an order compelling defendant to comply with the PSA and sell the property. According to plaintiff, it will waive defendant's promise to assist it in obtaining financing. Plaintiff represents that it is ready and willing to close by tendering the remainder of the purchase price of $10 million, as evidenced by a loan proposal dated October 30, 2023, from a third-party, Oak Funding.

In opposition, defendant argues that plaintiff's cross-motion is procedurally improper. Defendant also argues that such motion fails on the merits and that the court should award costs in favor of defendant for having to oppose such a frivolous motion.

5

## Discussion

"On a motion to dismiss [pursuant to CPLR 3211 (a) (7)], the complaint is to be afforded a liberal construction, the facts alleged are presumed to be true, the plaintiff is afforded the benefit of every favorable inference, and the court is to determine only whether the facts as alleged fit within any cognizable legal theory" (*Thompson Bros. Pile Corp. v Rosenblum*, 121 AD3d 672, 673 [2d Dept 2014] [citations omitted])

"A motion to dismiss a complaint pursuant to CPLR 3211 (a) (1) may be granted only where the documentary evidence utterly refutes the complaint's factual allegations, conclusively establishing a defense as a matter of law" (*Gorbatov v Tsirelman*, 155 AD3d 836, 837 [2d Dept 2017] [citations omitted]). "In considering a motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7), the sole criterion is whether, from the complaint's 'four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law'" (*Stewart Tit. Ins. Co. v Bank of N.Y. Mellon*, 154 AD3d 656, 662 [2d Dept 2017] [*citing to Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). "Although the facts pleaded are presumed to be true and are to be accorded every favorable inference, bare legal conclusions as well as factual claims flatly contradicted by the record are not entitled to any such consideration" (*id.* [citations omitted]).

A written agreement that is complete, clear, and unambiguous on its face must be enforced to give effect to the meaning of its terms and the reasonable expectations of the parties (*Geriler v Davidoff Hutcher & Citron LLP*, 186 AD3d 801, 805 [2d Dept 2020] [citations omitted]). "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Willsey v Gjuraj*, 65 AD3d 1228, 1230 [2d Dept 2009] [internal quotation marks and external citations omitted]). "Therefore, a court will not imply a term where the circumstances surrounding the

6

formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms" (*id.*).

Here, the PSA is clear that defendant was required to "provide reasonable cooperation and assistance to Buyer in connection with the arrangement of buyer financing…provided that such **requested cooperation and assistance** does not unreasonably interfere with the ongoing business of such Seller" (emphasis added). Plaintiff fails to allege that it ever requested defendant's cooperation or assistance and that defendant failed to comply. Moreover, the PSA is clear that obtaining the financing to close was, ultimately, plaintiff's obligation and not contingent on defendant's reasonable efforts. Section 3.4 states that nothing provided herein "shall be deemed to create a financing contingency or to condition Purchaser's obligations hereunder on Purchaser's ability to obtain financing," and further, that "buyer's obligation to close the transaction was not, in any way, subject to or conditioned upon Seller or CW's arranging of buyer financing on behalf of Purchaser." The foregoing refutes plaintiff's allegation that defendant was obligated to independently locate favorable financing for plaintiff or that plaintiff's obligation to close was dependent on an undefined, baseline amount of effort by defendant.

In addition, defendant demonstrated that it is entitled to retain the Deposit as plaintiff failed to close pursuant to the PSA. Thus, plaintiff's second cause of action for imposition of a constructive trust with regards to the Deposit fails to state a claim.

Turning to defendant's request for sanctions and attorneys' fees, defendant fails to demonstrate that this action is frivolous or that plaintiff commenced this action solely to harass defendant. Similarly, the court declines to sanction plaintiff for the filing of the belated cross-motion. Lastly, CPLR 6514(c) authorizes an award of costs and disbursements if the cancellation of the notice of pendency is made pursuant to that section (*Congel v Malfitano*, 61 AD3d 807, 809 [2d Dept 2009]). Here, the cancellation of the notice of pendency stems from dismissal of

plaintiff's complaint pursuant to CPLR 3211, not CPLR 6514. As such, defendant is not entitled to costs pursuant to CPLR 6514.

Accordingly, defendant's motion is granted to the extent that the complaint is hereby dismissed for the reasons indicated above. The notice of pendency shall be vacated immediately. The motion is otherwise denied. Plaintiff's cross-motion is denied in its entirety.

ENTER:

_____
Honorable Reginald A. Boddie
Justice, Supreme Court

HON. REGINALD A. BODDIE
J.S.C.

# EXHIBIT C

# (TRANSCRIPT OF HEARING ON MOTION TO REARGUE)

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF KINGS - CIVIL TERM - PART COMM12
 2   -----------------------------------------X
     525 PARK WILLIAMSBURG,
 3                         PLAINTIFF,
                                              INDEX NO.
 4        -against-                           521411/23

 5                                            MOTION
     525 PARK LLC,
 6
                         DEFENDANT.
 7   -----------------------------------------X

 8                    360 ADAMS STREET
                      BROOKLYN, NEW YORK 11201
 9
                      JANUARY 18, 2024
10

11   B E F O R E:

12                    THE HONORABLE REGINALD A. BODDIE, JUSTICE

13
     A P P E A R A N C E S:
14

15   ELLIOTT MARTIN LAW
     16 COURT STREET, SUITE 2304
16   BROOKLYN, NEW YORK 11241
     BY:  ELLIOTT S. MARTIN, ESQ.
17       FOR THE PLAINTIFF

18
     COHN & GOLDBERG
19   16 COURT STREET, SUITE 2304
     BROOKLYN, NEW YORK 11241
20   BY:  STEVEN D. COHN, ESQ.
         FOR THE PLAINTIFF
21

22   SCHWARTZ SLADKUS REICH GREENBURG ATLAS LLP
     444 MADISON AVENUE, NEW YORK, NEW YORK 10022
23   BY:  ANDREA J. CARUSO, ESQ.
         FOR THE DEFENDANT
24

25                              GIULIA GIBONI
                                SENIOR COURT REPORTER
```

1                    COURT OFFICER:  All rise.  Commercial Part 12 is

2       now in session.

3                    THE CLERK:  Index Number 521411/23, 525 Park

4       Williamsburg LLC vs. 525 Park LLC.

5                    THE COURT:  Okay.  Movant, you may be heard.

6                    MR. MARTIN:  For the Plaintiff, Elliot S. Martin,

7          of counsel to Goldberg and Cohn, LLP, 16 Court Street,

8          Brooklyn, New York.  Good morning, Your Honor.

9                    THE COURT:  Good morning.

10                   MR. COHN:  Steven Cohn, Goldberg & Cohn, 16 Court

11         Street, Brooklyn, New York.  Good morning, Your Honor.

12         Thank you for allowing us to appear.

13                   THE COURT:  Good morning.

14                   MS. CARUSO:  Andrea Caruso, Schwartz Sladkus Reich

15         Greenburg Atlas LLP, 444 Madison Avenue, New York, New York

16         for the Defendants.  Good morning.

17                   THE COURT:  Okay.  Movant, you may be heard.

18                   MS. MARTIN:  Thank you, Your Honor.  And I preface

19         this by saying I appreciate you taking the time to take a

20         look at what we're bringing to you.  We appreciate you

21         taking a second look.  We think that there are reasons why

22         it bears your time to at least consider the arguments that

23         we're raising.

24                   My argument today is going to be short because

25         it's focusing only on two pieces of paper.  The Defendants

1    made a strategic decision to deal with this complaint by

2    filing a 32.11 motion.  By doing that, they bring the

3    sufficiency of the complaint before the Court, but they

4    also accept every allegation that's in the complaint as

5    true and all reasonable inferences that arise from that,

6    because what we have before this Court is an evidentiary

7    record.  And the evidentiary record consists of the

8    complaint, which the Defendant has acknowledged as

9    completely true -- although the conclusions of law,

10   obviously, they're going to contest -- and the contract of

11   sale.

12           These are the two documents that are important,

13   because our argument is addressed to the parties'

14   relationship at the point that the contract was formed.

15   This is a contract for sale of property in some building in

16   Williamsburg.  And where we believe the basis of our

17   specific performance -- complaint lies is in promises that

18   the seller made.

19           And if you look at the complaint itself, there is

20   a specific -- a specific allegation that Checksy [phonetic]

21   Weiss, who is the principal of the LLC seller, promised

22   that he would use his -- provide reasonable efforts to

23   cooperate with the plaintiff purchaser to obtain financing.

24   And in the complaint, the narrative is explained to some

25   extent.  It explains that the purchaser's principal is a

1     much younger man and he relied on the older man to -- he

2     thought this was part of a larger relationship.  All of

3     this is in the complaint and has to be accepted by the

4     Defendant.  And the promise to provide reasonable

5     cooperation is a real promise.

6          Now, if the part of the contract -- it's a long

7     contract, but it's only two paragraphs, which is 3.4 of the

8     paragraph.  That's where all of the important language is

9     obtained.  And it says a number of things in 3.4.  This is

10    Court Document 10, if the Court would want to look at it

11    because, I'm going to be talking specifically about the

12    language in there, because this case turned upon this

13    specific language.

14         So, you'll notice in this language that there's

15    clearly written protective -- the language for the seller.

16    The seller promises, he provides a promise -- the word

17    "shall" is used -- "shall provide reasonable cooperation

18    and assistance to the buyer in connection with the

19    arrangement of financing for this transaction."

20         But this promise is qualified by a number of

21    specific provisions.  It's qualified above in the first

22    paragraph of this two-paragraph clause, that "nothing

23    contained shall be deemed to create a financing

24    contingency."  Understood.  We understand that as the

25    purchaser, we're not going to tell the seller, sorry, we

1   want our money back.  We want to walk out because we can't

2   get financing.  That is understood.

3        Also in there is that, "requested cooperation and

4   assistance" -- we'll get back to the word "request" because

5   I know that this is part of how everybody looked at this

6   the first time through -- "does not unreasonably interfere

7   with the ongoing business of such seller."  What that means

8   is hard to say.  I mean, the language itself is ambiguous,

9   and I think it raises a definite issue of fact as to what

10   it means, and also, what, if anything, that the seller did

11   to live up to the clear promise to provide cooperation.

12        And again, again, just to make sure that there's

13   no issue about it, the seller that drafted this contract

14   ended this paragraph by saying, "Purchaser's obligation to

15   close the transaction hereunder on the scheduled closing

16   date shall not in any way be subject to or conditioned upon

17   the seller arranging of buyer financing."

18        All right.  So in other words, the person who

19   drafted this contract knows how to write a contract that

20   makes a clear statement as to what the parties' rights and

21   obligations are.  But there is that promise in this

22   contract.  It is a clear promise, and it's also -- not only

23   -- it reinforces the oral statements that the complaint

24   recounts that the seller said to the buyer.

25        And somewhere along the lines, I submitted to the

1      Court, standard language, "a contract must be read as a

2      whole to give in effect a meaning to every turn." So, I'm

3      just respectfully asking the Court to focus on this promise

4      and see whether there are issues of fact that relate to

5      this.

6             Now, the word "requested" is in the contract, and

7      that for sure is there -- it's used as an adjective.  It is

8      not used as a verb, that the purchaser shall request

9      cooperation or that the promise is qualified by -- that the

10     seller shall provide reasonable cooperation and assistance

11     if requested, or as requested -- no.  It's not in there.

12            If the parties wanted to say that a specific

13     request from buyer to seller was a necessary condition for

14     this promise to be given effect and by the seller, they not

15     only could but would have said that, and the expectation of

16     the purchaser in entering into this deal is framed by the

17     contract itself as well as the other things that we repeat

18     in the complaint.

19            This, I believe, raises issues of fact I think the

20     issues of fact are on the face of the documents, not only

21     the contract, but the complaint.  Anything else that is

22     talked about, letters that went out and closings that were

23     set, that goes after this.  Because if you think about this

24     type of contract and what the parties were talking about

25     with this particular language, it's part and parcel of what

1      a purchaser does in getting ready to close, in putting his

2      finances in order to close, in marshaling his assets to

3      close.  This promise comes before any time of the essence

4      contract, anything that we're ready to go forward.

5           If you think about just the sequence, the

6      practical sequence on the ground, if you think of two men

7      sitting aside a table and signing a contract and what the

8      reasonable expectation is, I think the reasonable

9      expectation is, the seller said, I can do this, not only

10     generally speaking about getting you a good rate in general

11     terms, but in specific terms.  I can -- or at least will

12     talk to my present lender about you taking over that loan.

13     I will do that.  I will make these efforts.

14           There is nothing in this record that shows that

15     the seller made any such efforts.  And I think that if the

16     Defendant is going to argue that there was no obligation to

17     make these efforts as a precondition for the purchaser to

18     be bound, I think, that only if she does violence to the

19     language of the contract which her client wrote.

20           This is summary judgment.  There's a million

21     dollars which our client gave unprotected at the inception

22     of this contract.  I know Ms. Caruso said the last time

23     that she doesn't think that this is so unusual.  I don't

24     know, I'm a lot older.  Maybe my clientele is not as

25     wealthy as that.  I've never seen that before, a million

1    dollars.  But he did it, and he did it for -- it's part of

2    a particular dynamic between the two of them.  The older

3    man is saying, listen, I'll make the cooperation and you

4    can rely upon me, and the younger man is influenced by that

5    and gives up a million dollars that the seller used to do

6    whatever the seller wanted to do upon day one.

7         If you take a look at the whole picture, I think

8    that there is reason to think that the purchaser should

9    have the opportunity to go forward and have discovery on

10   what the contract means and what the seller did.

11        If the seller did not do anything, then there's a

12   promise in this contract that is unfulfilled, and this

13   promise is material to setting the closing, because it's

14   all part and parcel of activities before the date of the

15   closing.  So, it's a particular and special kind of

16   promise.  Thank you.

17        THE COURT:  All right.  Ms. Caruso?

18        MR. COHN:  Just a minute, Your Honor.  I think you

19   have to advise the Court that there was a filing and what

20   the Court wants to do or not.

21        MS. MARTIN:  Oh, okay.

22        THE COURT:  Was there something else?

23        MR. COHN:  We just got notification --

24        MS. MARTIN:  We got notification that our client

25   has -- the LLC, the party before you, has filed for

1        bankruptcy, but it is not something that -- I mean, I spoke

2        to the bankruptcy attorney just before we started arguing,

3        and she told me that she doesn't see a problem in going

4        forward.  And me, the way that I reason this, is that I

5        don't see a problem either.  But I guess, in excess of

6        caution, would just advise and notify the Court.  Okay.

7                 THE COURT:  Okay.

8                 MS. CARUSO:  Yeah, on the bankruptcy issue first,

9        there's no issue because they're the Plaintiff.  So, when

10        it's a Defendant, the automatic stays apply.  When they're

11        a Plaintiff looking to potentially enlarge the size of the

12        debtor's estate and bankruptcy, there's no stay.  So, I

13        don't believe that there's any hindrance today.

14                 On the motion, Your Honor, this a motion to

15        reargue pursuant to 22.21.  And as Your Honor is very well

16        aware, they have to identify points that the Court

17        misapprehended or overlooked and show at that there is

18        something that warrants a reargument, and upon reargument,

19        a change in that position.  But a motion to reargue is not

20        intended to provide the party that lost the opportunity to

21        make identical arguments or make new arguments.

22                 I'm going to briefly go over -- there were three

23        argument that weren't orally argued today that are in the

24        papers.  Those arguments related to the complaint not being

25        cited, related to sufficiency of notices, and related to

1       whether we comply with the notice of provision.

2               Those weren't in the underlying papers.  Those

3       arguments aren't in the papers and therefore, they're not

4       properly to be considered in the papers on the motion to

5       reargue, so they shouldn't be considered here.

6               If Your Honor so chooses, we do go through why

7       those arguments are incorrect.  I'm happy to explain them

8       to you now, but since they weren't orally argued, I'm going

9       to rely on my papers in those regards.

10              With respect to specifically the issue of this

11      claim and the language, for starters, the standard is not

12      whether or not there was an issue of fact.  It was a 32.11

13      motion to dismiss.  It's a question of whether the

14      documentary evidence utterly refuted claims, or whether the

15      claims weren't sufficiently pled.  That's what was

16      reviewed, and that's what should be reviewed.  And on a

17      motion to reargue, it's the exact same standard.  It's not

18      about a question of fact.

19              What was argued before Your Honor today is a

20      little interesting, because most of those arguments weren't

21      in the papers.  So I'm kind of going to argue off the fly a

22      little bit to make sure that it's comprehensive here.

23              The decision didn't apply any standard other than

24      the standard which I previously stated.  What Your Honor

25      found -- and Plaintiff wants you to sort of cherry pick

1        what provisions of 3.4 you were to apply.

2              And the decision doesn't do that.  The decision --

3        besides the fact that it's an identical argument, there's

4        no point in the papers that says you overlooked this, or

5        you mistook this.  He wants you to accept his

6        interpretation of the language in the contract -- which he

7        already argued -- and give credence to certain words over

8        different words as opposed to taking the whole paragraph at

9        face value.

10             The decision does that.  The decision is very

11       clear in that it says, we're to give effect to every term

12       that's included in there, especially when it's unambiguous,

13       and that's exactly what we have there.

14             The decision said that the PSA is clear that the

15       Defendant was required to provide reasonable cooperation

16       and assistance to the buyer in connection with the

17       arrangement of buyer financing.  And then it says the word

18       "provided."  Now, provided insinuates a condition preceding

19       it.  "Provided that such suggested cooperation and

20       assistance does not unreasonably interfere with the ongoing

21       business of the seller.

22             The ignoring of the word "requested" is why we're

23       here.  We argued this ad nauseam last time we were here.

24       The word is there.  The word exists, and it has a meaning.

25       And the word "requested" doesn't meaning anything else

1    other than what everyone else understands that word to

2    mean.  It means there has to be a request for it.  There's

3    no requirement for the seller to provide something that's

4    not requested of him.

5           Now, the argument today argued that there were

6    promises made.  There were promises, and it's in that

7    contract.  And that contract was attached to the complaint

8    and therefore qualifies as documentary evidence.  I don't

9    think there's any dispute there.

10          But the other points, that we will talk to our

11   lender and these other factual allegations, aren't in the

12   contract.  We went through last time that there's a merger

13   provision in the contract; that there's a statement in

14   there that any representations made outside the contract

15   fall away unless they're in here.  So any argument again

16   today that there were these promises that in the complaint,

17   verified or not, are irrelevant when you're suing on a

18   breach of contract.  You are limited to the contract terms.

19          The other thing Your Honor found in this decision

20   about this request is that Plaintiff failed to allege that

21   it ever requested Defendant's cooperation or assistance.

22   They don't come here today and say, no, no, no, no, look at

23   our complaint, the paragraph says we did request it.

24   They're again coming here without argument.  That's fatal

25   to this whole motion on the merits.  There has to have been

1        some sort of request at some point for this relief that

2        wasn't there.

3                But Your Honor went beyond that in your decision.

4        You give credence to everything.  You say that -- you

5        specifically include that Section 3.4 says, "Nothing

6        provided herein shall be deemed to create a financing

7        contingency or a condition to purchaser's obligation

8        hereunder, and that purchaser's obligation to close the

9        transaction was not in any way subject to or conditioned

10       upon seller or CW's arranging of buyer financing on behalf

11       of purchaser."

12               The decision is very comprehensive, and they're

13       not coming here saying or showing anything that was missed.

14       They are just rearguing the same thing.

15               I don't think that at this point there's been any

16       reason to grant leave to reargue or to change it if you

17       were to grant leave, or to change your decision.  There

18       were arguments today that, you know, the allegations have

19       to be accepted as true.  Well, that's not really the

20       standard.  They have to be accepted as true unless

21       disproven.

22               There's case law that's included in my

23       paperwork -- like, bald legal assertions aren't accepted as

24       true.  Facts that are directly contradicted by a contract,

25       which is attached to their complaint, aren't accepted as

1     true.  The decision from December 7 goes through all of

2     that.  There's no question.

3          And then there's this issue that was discussed

4     today about this one million dollars not being released --

5     again, not in the papers -- but it's irrelevant to this

6     whole thing.  There's no tying into the argument.  Whether

7     or not it's standard practice or not, I've seen it multiple

8     times, in all honesty, and I've only been practicing,

9     almost 14 years.  I've seen it multiple times.

10         But it doesn't matter.  It doesn't change the

11    decision.  The language of the PSA is the language of the

12    PSA, and Your Honor's decision comprehensively goes through

13    it, compares it not only to the complaint but compares it

14    to the legal standard, and it was appropriately applied.

15         So at this point, I don't believe that there's any

16    reason to disturb Your Honor's prior decision.  I also am

17    going to request that -- we have a TRO in effect, Your

18    Honor, through today.  Based on my argument, the position,

19    I do not believe that the TRO should continue past today

20    and I'm asking that it be vacated as well.

21              THE COURT:  Okay.

22              MS. MARTIN:  Briefly, Your Honor, thank you.

23         To start off as to why we're here, Ms. Caruso said

24    that we can't ask the Court to reconsider its previous

25    decision by looking at the same argument.  And she also

1          says we can't ask the Court to look at new things.  So,

2          what are we here for?  Why did the legislature actually

3          pass the statute that allows the Court to reconsider.  Of

4          course, of course there should be a mechanism for a Court

5          to take another look at what it did.  And I think that what

6          we put here today, the reason why I kept the argument so

7          narrow, and I tried to stay within the confines of how we

8          had looked at it before, we agreed that the word

9          "requested" is something that's important as part of this

10         whole process.  But it's used as an adjective, it is not

11         used as a verb.  It is not coupled with other words that

12         say what Defendant would like the Court to believe it says.

13              It doesn't say that.  It doesn't put -- there's a

14         promise.  The promise was given for consideration.  Whether

15         the one million dollars to be released is something that's

16         common, it still is consideration.  All of this was

17         exchanged.

18              The Court -- I'm just asking the Court to take a

19         look at this contract in terms of what the expectations

20         were with the parties.  And I think if you apply that

21         standard, I think you may think that you may want to just

22         reconsider what you did.  We ask you respectfully to

23         restore the complaint, and then we can all go on from there

24         and then figure out what really went on between these

25         people when they signed the contract.

1            THE COURT:  Okay.  Thank you.

2            MR. COHN:  Your Honor, the only thing, using the

3       word "request."  I spoke with Ms. Caruso outside.  I

4       request that you hold any decision for 10 days.  We can

5       discuss possibly a settlement.  She's going to talk to her

6       -- her client said move ahead, and I will speak to my

7       client.  I don't think that prejudices anyone for ten days.

8       And we'll let the Court know yes or no or if we can.

9            MS. CARUSO:  I disagree, Your Honor.  I can't hold

10      this in abeyance.  We've had a TRO now in effect for two

11      weeks.  They've had two weeks to come to me with this

12      offer.  Coming to me this morning asking for another ten

13      days -- I can't do it.

14            If we were actively in negotiations and I can make

15      that representation to you, I would.  But the first I heard

16      of it was this morning.  No one has come to me since the

17      TRO.  That was the argument when they requested the TRO,

18      was, there's no harm, it's two weeks.  Well, every two

19      weeks we're going to say there's no harm for two weeks?

20      It's just not appropriate.  So, I think we can't hold

21      anything else in abeyance at this point.

22            MS. MARTIN:  And just for me to weigh in, I really

23      think we've given you something to think about, Your Honor.

24      And I think if you take a look at, again, from the very

25      narrow terms that we defined, give credence to all parts of

1       the contract, maybe you -- something that you may

2       reconsider in your decision.  I just ask that you just take

3       the time to do that.

4                   THE COURT:  Decision reserved.  Thank you.

5                   MR. COHN:  Thank you very much, Your Honor.

6                   MR. MARTIN:  Thank you, Your Honor.

7                   MS. CARUSO:  Thank you, Your Honor.

8                   THE COURT:  All right, everyone.  Enjoy your day.

9        *    *    *    *    *    *    *    *    *    *    *    *    *

10   It is hereby certified that the foregoing is a true and accurate

11   transcript of the proceedings.

12

13

                                        _____
15                                        GIULIA GIBONI
                                        SENIOR COURT REPORTER
16

17

18

19

20

21

22

23

24

25